Alright, Mr. Williams, you're ready to go, huh? Yes, ma'am. Good. This is the Lisa Colvin v. Board of Supervisors of the University of Louisiana. Thank you, Your Honor, and may it please the Court. In this FMLA case, an issue of interest is being reviewed is whether the District Court erred in concluding that the State of Louisiana and not Dr. Steven Richter's is the real party at interest in this claim against an individual employed by the State of Louisiana. This issue has, I believe, been a very troublesome one for the Bar. I think there are a lot of questions about when an individual can be sued. I think both sides, by way of introduction, have cited . . . Well, what is the complication of that? You either sue someone in their individual capacity or in their official capacity. And I think the complication . . . And you just say that in your pleadings quite clearly. It's one or the other. Well, Judge, I think the complication arises particularly in the context of the facts of this case, whether the individual sued is the real party at interest. Well, that depends on the . . . in the hand of the pleader. If you can sue an official in the individual capacity, you may well front and probably would confront an immunity from damages enjoyed by the individual. But you would not be confronted with a state sovereignty. It's just a question of which sovereign interest you're going to face. But the category where you sue one or the other is a pleading event. You just make it clear who you're suing. Now, if you name someone as a defendant and you're vague about it, but all the relief you seek is against the state, well, then you're dealing with the state. But that gets into our problem of just characterizing what the suit is about. Well, Judge, the . . . I guess I'm missing something there, but . . . I'm sorry, Judge? I must be missing something. I don't really see what the large problem with the bar is. Okay. Let me say this, that the district court looked at pleadings, we believe rather superficially, and ignored and just looked at part of the pleadings. We say, for instance, in Paragraph 2, further made defendant to Stephen Rickers, an individual who at all times was called a supervisor, and an individual personally responsible for illegally retaliating against her contrary provisions of the Family Medical Relief Act is more fully set out below. There was a good deal made, for instance, in possibly a statement and a prayer for relief, where . . . and damages in Paragraph 19 . . . A prayer for relief? Oh, no, never mind. It's the damages you left him out of. Well, in Paragraph 19, it says, as a result of ULM's violation of the Family Medical Relief Act, then we go on. But all that relief is something that the school has to give. This individual can't give that relief, so what do you care? Why do you need him? Well, really, if you look at the prayer, the final prayer for relief, and the very last sentence of praise for judgment against the Louisiana system and Stephen Ricker in amount to be determined for all equitable relief deemed just and proper. But the equitable relief is going to come through the school. He can't reinstate this woman alone. I don't know why you're here. Well, Your Honor, there have been very, very distinct lines of cases concerning whether or not someone is acting as an individual or acting . . . First of all, the statute gives Richters the status of employer. That was determined very well for this circuit. There are several very distinct questions. If you sue this person, name them as a defendant, and you sue under a federal statute, there's a question whether you have a claim under that statute where the statute gives you any right of relief against that particular individual. Assume that you have a right of action, and then you sue that individual. You either sue them in their individual capacity or you sue them in their official capacity. You can sue them in their individual capacity if you seek equitable relief, provided that those officers are authorized under the law of that state to enforce the law that you seek to ask the court not to be enforced. That's the ex parte Young Doctrine. Beyond that, I'm not sure what we're talking about here. Well, Your Honor, that is true if you sue a state official in their official capacity. That has been set out. Relief under an individual can be both equitable and also substantive. And so we are here for more . . . But not . . . I mean, well, I agree with you. The test is hard to discern. HAFER is where it seems like it starts, and the court says, look not into capacity as the capacity in being sued, but rather the capacity sort of as the inflictor. Right? Yes. Okay. But in this case, then that would lead me to think, what's the relief you want? And I thought, you know, Pennhurst, Henley, ask that also. So when you get to the relief section, you want things that he can do as provost. Reinstate, pay. Well, now Dr. Richards is, as a matter of information, the executive vice president of the entire institution. So his executive power has only increased. Okay. But that aligns him more with ULM. This is my word, not anywhere I saw in the case law. It seems like what you're looking for is congruence or not. And in the complaint, it says ULM, through her supervisor, did the following, specifically gave her work while she was home and wasn't supposed to be getting work. It's only in your brief do you say that he was working. His communications to her in that period were contrary to university policy. So then when I look at the record sites, it doesn't ever say that. So the complaint doesn't distinguish and say he's acting contrary to university policy. The complaint says the opposite. It's only in the brief do you turn around and create the discontinuity that might give you a personal capacity, not an official capacity. Well, Dr. Richards was always acting in the course of his employment. But he was not acting within the scope of the employment when he violated both university policy and federal law in not only denying this woman her FMLA leave, but then in several instances retaliating against her for taking it. I mean she comes back from leave and within five days is ejected from her job as graduate dean. Very, very close spacing in time. And that was something that her immediate supervisor was responsible for. And she wants reinstatement, but that looks to me like a state policy relief. Well, no, this was something done by this individual in his capacity, in his private capacity. It was something that he could do. It was something that he could do was to insist that she work, even though she was bleeding out from a pelvic operation. But Henley, right, which is sort of a distinguishing case to Monica, it was still those people that in their supervisory capacity carried out the state policy. Well, any time a state employee acts, unless he is outside the scope of his employment, he carries out a state policy. And your claim now is that he acted outside the scope of his employment. He acted outside the scope. But then in the complaint it says ULM through the supervisor did the following actions, Paragraphs 9, 10, and 11. We also say in Paragraph 2 that he was indigent in response for doing this. And I think pleadings need to be construed to do substantial justice. I don't think if the pleadings were ambiguous that that should not be held against my client. He was trying to vindicate a statutory right. The issue really here I believe was set out very well in the Modica case, which I believe that Chicken Biden was on the panel for that. And there was a very, very lengthy and convincing definition of who an employer is. And Judge Higginson, I think this goes to your question. Because if this individual fits the definition of an employer under the statute, then the question of whether he's acting in the course and scope goes away. Because he is an employer in his own right. But Modica's answering an issue that had divided circuits and continues to divide circuits, correct? Yes. But that's not the issue before us. As Judge Higginbotham said, that's a threshold question. Threshold question. It has been decided. There was a . . . But is there any elaboration in Modica about this specific question of how do we distinguish between personal capacity and official capacity? I didn't see it. Well, I think isn't the question whether or not someone was acting in such a way as to . . . I mean the issue is real party at interest. And we have cases, you know, distinguishing . . . We have cases exploring this situation. We have all cited the Luder case. We have cited the . . . the Delahousie case. We've cited the Pinser's case. The Pinser's case . . . You relied heavily on . . . Delahousie is sort of much more about the board liability, right? Well . . . In Delahousie, the police officer, it was conceded he was acting in official capacity. Right? The individual. So that wasn't an issue in Delahousie. Right. He said he was sued in Delahousie. He was sued only in his official capacity. Right. So the focus and the analysis there was the entity. Right. That's not an issue in Oregon. Pinser's . . . In Pinser's, the plaintiffs were attempting to sue a state school and . . . boarding school and hospital through individuals. Clearly, an attempt to end Ron. Can I just ask, what is the compensable harm that connects to the provost, Mr. Richter's? The compensable harm . . . That connects to his actions taken in a personal or individual capacity. First of all, he reduced this individual's pay by $10,000 and reduced her from being an administrator with high promises to reduce her back to a department chair instantly after she returned. And that was right after he personally told her, according to what the record says, to, excuse the language, get your ass back to work when she reminded him that she was on FMLA leave. This was something he and he alone did on his own mere motion. This was something he . . . And in so doing, he acted way outside of the scope of his employment. He acted against the university policy and against federal law. It is these instances where federalism . . . I mean, if I could just remind . . . That's got to be your argument. Where in the complaint do you specify that his actions were outside the scope and contrary to university policy? Well, it was developed as facts and presented . . . I'm asking in the complaint. In the complaint I read it, it's all he, acting on behalf of ULM, did the following. Therefore, we want the relief from ULM of the following. Well, Judge, again, I'll cite . . . You'll say that he . . . your first paragraph, too. So that's what . . . He is identified as an individual personally responsible for illegally retaliating her contrary to the provisions of the Family Medical Leave Act. What was the basis of liability of the Board of Trustees? I don't think the basis of liability is that . . . Well, I don't think . . . they are immune under the 11th Amendment. Of course. Weren't they named as defendants? They initially were, sir. I know they're out. But my point is that you . . . what you . . . you complained against the Board of Trustees, but for the actions of this individual. And you now say that he was acting out of a defiant . . . Well, it was offered . . . it's certainly in the alternative. And, you know, before discovery, this was up in Monroe. I'm down in New Orleans. I'm talking on the telephone. This is my . . . this is the first . . . this is the first plea before any discovery. All right.  You saved some time for rebuttal. Mr. Dubose. Good morning, Your Honors. Michael Dubose on behalf of the defendants. I believe Your Honors hit directly on the nail that, you know, holds this whole case together. We could argue over what specificity is required in pleadings. There's some room for dispute. But we can't dispute that once you are specific in pleadings, you're not somewhat bound by your allegations. Plaintiff did make some conclusory allegations regarding Dr. Richter's personal liability. But when you look at the specific allegations, everything was Dr. Richter's acting on behalf of ULM or ULM acting through Dr. Richter's, as Judge Higginson noted, with respect to the . . . you made me work when I was on FMLA leave. Which, by the way, one of her complaints is he wouldn't allow her to work while she was on FMLA leave. So it's kind of where are you? It's all over the page with respect to that. But clearly, that allegation was against Dr. Richter's acting on behalf of the university. Plaintiff also cites this university policies that she contends never introduced in university policies. There's none attached to her motion for summary judgment. Never articulates what policies Dr. Richter's is alleged to have violated. I believe one of you asked, why do you need Dr. Richter's? Well, the answer is clear. He sued ULM. He sued the Board of Supervisors. And then the 11th Amendment under Coleman v. Maryland, which held that the self-care provision of FMLA is not applicable to the state or it does not abrogate sovereign immunity because there was not justification under the 14th Amendment's enforcement clause to make it applicable to the state. So what plaintiffs seek to do is they seek to basically have all your HR directors now employers. They'll sue them individually because they're acting and pursuing the interest of the employer. Then they'll get the judgment against them, and then the state will pay the judgment because under the statute it has to pay for any acts committed in the course of employment. So basically, if you're making $60,000 a year as the HR rep at ULM, you better have an insurance policy if you violate any of these statutes because now you're personally liable. Right, but you're not trying to relitigate Modica. No, Your Honor. Do you accept that as our law? I do accept that. The indemnification provision doesn't in any way mean, oh, well, it's the state's money and therefore can't be personal capacity. Right. I think we have to be careful with Modica, Your Honor, as to when an individual can be held personally liable and for what can the individual be held personally liable when the state is immune because the state only acts through individuals. The state has no jury. I agree we've got to be careful by Modica, but it is their case. It is the case cited by the district court, and you didn't discuss it at all in your brief. That's correct, Your Honor, because I don't believe Modica controls. Modica set forth a very general principle but didn't give us any framework with how to use this. When can you go after the individual? And it's a very narrow ex parte Young exception. When the individual's conduct violates a constitutional provision, then you can enforce the individual to comply. I mean, as to the individual, I was looking in your brief. I think you've got two paragraphs devoted to it, and if I'm correct, the only case from our court you cite is Delahoussee, but that doesn't have anything to do with individual liability. I agree, Your Honor. Okay, so give us a case, since you have it in briefing, that is informative on this issue, and it is a hard distinction to draw. It is, Your Honor, and I believe if you look at what other circuits have done with the economic reality test, and you go to Martin v. Spring Break, a case from this circuit, 688 Fed 3rd 245. It was an FLSA claim, which has the analogous employer definition for personal liability, and they applied this economic reality test to determine when is somebody acting individually and when are they an employer? And they say to determine whether the individual or entity is an employer, the court considers, number one, did they possess the power to hire and fire the employee? Nothing in the record to suggest that Dr. Rickards had the power to hire and fire a tenured professor. Second. Boy, that's okay. I mean, this is helpful to know if that's the test. It would have been nice to have it in the brief, but the provost, the issue isn't so much whether he could hire and fire the tenure status. She's a department head or maybe even an assistant dean, and the provost is the one that actually does do the demotions. Actually, the Board of Supervisors makes the appointment. The contract specifically states that it has to be approved by the board. Was it his recommendation to the board? He does make recommendations to the president, who then makes recommendations to the board. So the first prong is, okay, all right, that's a little bit cloudy, but go ahead. The second prong is whether he supervised or controlled the work schedule or conditions of employment. Nothing to indicate that Dr. Rickards controlled the work schedule, which is set by the academic calendar, or the conditions of employment, which are set by the job descriptions handed down by the university. Is it disputed that he was sending e-mails to her saying do the following work while you're at home? Is that disputed factually? That is disputed, Your Honor. Okay, but so that becomes a problematic prong too. That's why we didn't even go there, to create disputed facts, because that is the issue there. He clearly alleges that ULM was the one sending the work through Rickards. That's an official capacity. That claim is clearly alleged against Rickards in his official capacity, and the Eleventh Amendment stops that claim immediately. All right. It is hard because clearly it wouldn't be ULM policy to use coarse language in telling her, and that's politely stated. If, in fact, it happened. Well, but then you get into a Tolland situation. That's a factual dispute. And that's why we didn't go there, because she alleges that, you know, whether it was harsh language, and whether it violates university policy is not the test. If you look further at the test set forth in Martin v. Springbank, whether the supervisor could determine the rate or method of pay, Dr. Rickards could not, the pay schedule set by the board. And then if you look also to this court's unpublished decision in Hensley, Hensley used and discussed this test when it talked about the economic reality theory. It was actually Donovan, 747-966. In interpreting the FLSA, it says an individual supervisor has adequate authority over the complaining employee when the supervisor, quote, independently exercises control over the work situation. Okay. The plaintiff put forth no evidence that. These are all cases that you didn't give us. I understand, Your Honor, and I apologize. I will admit, and Mr. Williams is correct, it was a confusing issue. And the more we delved into it, the more we realized that maybe we were misguided in our brief, quite frankly. But when Donovan looks at whether the complaining, whether he had independent control over the work situation, it was looking at the economic reality test, which was, again, that's the test to look at when is the individual so far away from the employer. And there's nothing to suggest that Dr. Rickards has this autonomy within the university system, this very structured, statutorily created system. He's answerable to the board. He's answerable to the president. The work schedules are set by the academic calendar. The pay is set by the board. And there's nothing that plaintiff's put in the record. Another point I would note with respect to the timing issue. He says she was removed from her position as the associate dean of graduate school. This temporal element, it looks bad. What he doesn't say is that appointment was a one academic year appointment. The appointment expired in May of that year when she came back. That would be the time when that decision would be made. They don't dispute when even if they have a claim against the university and or Dr. Rickards under the FLSA, when you ask them, okay, put on your prima facie case, she fails to even meet the first element to show that she's protected under the FMLA, that she worked a requisite number of hours in the preceding calendar year to even be entitled to protection. The court might say, well, didn't you all give her FMLA leave? Well, that's not the issue. That would be between her and the university as to whether they granted her leave without pay, whether they denominated it as FMLA leave, what the state is not required to do because it's immune under the self-care provision. Once she invokes federal jurisdiction and seeks the rights and benefits and remedies allowed by the FMLA, then she's obligated to show that she's entitled to invoke that statute. That's the first element in the prima facie case. There's nothing in the record by Dr. Colvin as to how many hours she worked, that she's even entitled to invoke FMLA jurisdiction. If you get past that, that she suffered an adverse employment action, she would say, well, I didn't continue in my employee as the associate dean of the grad school. The next problem with that, she would have to show that she was treated less favorably than others who did not request leave. There's absolutely nothing in the record to show that anybody who did not get leave was treated better than her. Or she must show that the adverse action was made because she sought protection. And I think that's where she's trying to go, and it's this temporal element. But now the burden shifts under either the McDonnell-Douglas test or the mixed motives test in Desert Palms to articulate legitimate nondiscriminatory reasons. Dr. Richter set forth clearly the reasons why he did not feel that Dr. Colvin was an adequate administrator. She had problems getting along with other deans. She blew up in a meeting and was very unprofessional toward another administrator. She acknowledges this. She sent the apology letter. She purported to speak on behalf of other deans and give opinions on university issues that caused a lot of dissension when none of the other deans had ever given her proxy to speak on their behalf. She spent graduate school money promoting her pet project, the Kinesiology Summit, which had nothing to do with the graduate school, without any permission, without any supervisor's permission to do so. And it was based on these and her ab- This is getting away from the 11th Amendment argument. Yes, even if you get past that, the legitimate nondiscriminatory reasons. By Dr. Colvin's own admission, she went to another dean, Dr. McCown, and expressed that she felt overwhelmed and helpless as the associate dean of the grad school. So Dr. Richter, with the board's approval, removed her. The contract that she had for that position says this is not a guarantee. It's a one academic year. There's no guarantee you'll get it next year, and she did not. Dr. Colvin did nothing but offer conclusory allegations, and the district court noted, you put nothing in the record to show that these reasons were false or fabricated or that discriminatory- You're asking us to affirm for what primary reason? I'm sorry, Your Honor. You're asking us to affirm for what primary reason? I think you affirm primarily because the state's the real party in interest in this case. She seeks injunctive relief, equitable relief, reinstatement, only remedies the state can offer, and monetary relief for which the state would be liable. Alternatively, she's failed to even establish that she's entitled to any protection under FMLA under the first prong of the prima facie case that she qualifies, that she worked 1,250 hours in the preceding 52 weeks. She has nothing in the record to establish that. And alternatively, to get past that, she did nothing to shift the burden back to ULM. She did nothing to rebut the pretext or the legitimate nondiscriminatory reasons, rather. She acknowledges that she blew up with the administrator. She acknowledged that she was speaking on behalf of other deans without their authority. She acknowledged that she spent grad school money on this pet project of hers. She acknowledged she felt overwhelmed. Then, if you look what happened next, she gets appointed to the department chair position, not by Dr. Richter, but by Dr. Sandra Lemoyne. Once again, Dr. Colvin has issues dealing with other people. She takes issue with Dr. Lemoyne's long-term administrative assistant with whom Dr. Lemoyne had a flex time agreement to the point that the lady retired. And for budgetary reasons, Dr. Lemoyne was not able to hire someone else because they had a hiring freeze. Then she reprimands someone over whom she has no supervisory authority. Then she's speaking bad about Dr. Richter to non-university people. She's speaking bad about Dr. Lemoyne to non-university people. Dr. Lemoyne counsels her, nothing improves, and Dr. Lemoyne removes her, not even Dr. Richter. And Dr. Colvin does nothing to rebut those explanations, nothing other than offer these conspiratorial theories and what she thinks was the motivation. She thinks that Dr. Richter is orchestrated. She has no proof. Dr. Lemoyne said, I'm the one who made this decision. The bottom line, Your Honor, is this case should be affirmed for multiple reasons. First and foremost, this is a suit against the state. And the phrase I was going to use, Mr. Williams told, this is an end run around the 11th Amendment. It's trying to name the individual when all the relief you really seek is from the state. You're pleading say as much. You request relief from ULM is obligated for damages as follows, not Dr. Richter's. He's thrown in there as a nominal defendant to try to get the hook in to then have the state reinstate her and join the officials from acting in their official capacity in whatever way the court might fashion equitable injunctive relief and then monetary damages. And that's the issue. But if you even get past that, again, she has not even met the first element of the prima facie case that she's entitled to protection under FMLA. And if you get past that, she has not done anything to rebut the legitimate nondiscriminatory reasons offered. And I'll answer any questions that the court may have at this point. But that's the state's position summarily. I think your position is clear. Thank you, Your Honor. Thank you. Have a nice day. Thank you. Mr. Williams, you have rebuttal time. Thank you, Your Honor. I think a question for a jury is how did this acting dean within ten years coming to ULM at Monroe rise from an instructor to the head of the department to graduate dean and then suddenly become characterized as counsel has just characterized her? That in itself sets up a jury question. Now, we talked about the economic realities test coming out of the Fair Labor Standards Act. The definitions between the two are different.  And the conclusion in MOVCA was the only cases that we should look at FMLA cases to judge FMLA situations and not Fair Labor Standards. I mean, there was no mention, for instance, of labor unions. So that question, I think I would submit, has been answered in MOVCA. If you look at the section under individual capacity claims, that is thoroughly explored. Ultimately, you have to look at the kind of relief being sought. In Lutter v. Indicate, the Seventh Circuit case, the state was found to be a real party at interest when a group of state employees filed suit against the state for failure to pay overtime. Well, here, the state individuals sued were simply carrying out a policy set by the state and punishing them for carrying out a policy is something entirely different. And obviously, it wasn't in run. You've really got to look at individual facts. Here, Dr. Richter's had no effective supervision. He was the academic vice president. He had overall responsibility. The buck stopped with him. If he didn't set the policy, he had plenipotentiary powers to do what he wanted to do. You couldn't find a more different set of facts than Lutter, which found the state a real party of interest, and this particular individual. Here, the academic vice president is a professional, and he must only potentially satisfy a judgment against a single plaintiff. His exposure is no greater than any other lawsuit filed on any other given day, and thus indemnity cannot ever be said to be inescapable. I mean, for him, it's just like any other lawsuit. If he violated a federal statute, then he pays the price. You know, the purpose of the Pinser's case wasn't helpful because it was basically decided, well, here you're trying to sue state officers under state law in a federal court. That was Pinser's. But what Pinser said was you've got to balance the necessity of making public officials subservient to the supreme authority of the United States, and at the same time, you've got to be careful about impinging upon sovereignty. It is a very difficult situation. I don't think anybody in this room would want to give officers of public institutions carte blanche to violate clearly enunciated federal statutes to the detriment of individual citizens, and that is what this case is about. That's what this case will stand for. Thank you for your attention. All right. Thank you, sir. That concludes our docket for the week.